```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
```
----------------------------------------X

SYLBURN BARTHOLOMEW                           **MEMORANDUM AND ORDER**
                                                 16-cv-6337(KAM)

                    Plaintiff,

     -against-


NANCY A. BERRYHILL,
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

----------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge**:

Pursuant to 42 U.S.C. § 405(g), plaintiff Sylburn Bartholomew ("plaintiff" or "claimant") appeals the final decision of defendant Acting Commissioner of Social Security ("defendant" "the Commissioner"), denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act") on the grounds that plaintiff is not disabled within the meaning of the Act. Plaintiff, proceeding *pro se*, contends that he is disabled under the Act and is thus entitled to receive SSI benefits, due to his bipolar disorder. (ECF No.1, Complaint; ECF No. 12, Plaintiff's Affidavit in Opposition to Defendant's Motion for Judgment ("Opp. Aff.").

1

Presently before the court are defendant's motion for judgment on the pleadings and plaintiff's affirmation in opposition to defendant's motion. (*See* Opp. Aff.; ECF No. 14, Memorandum in Support of Defendant's Motion for Judgment ("Mot. for Judgment")).

## BACKGROUND

The factual and procedural background of this action is set forth in a joint stipulation of relevant facts stipulated by the parties and in the administrative record. (*See* ECF No. 14-1, Joint Stipulation of Relevant Facts; ECF No. 15, Administrative Transcript ("Tr.").) The court discusses only those facts relevant to its determination, as set forth herein.

I.  **Procedural History**

Plaintiff applied for SSI on June 28, 2013, alleging that he had been disabled since January 1, 2013, due to bipolar disorder and eye problems. (Tr. 148-56, 198-202.) The application was denied by the Social Security Administration on October 25, 2013. (Tr. 73.) Plaintiff sought reconsideration of his application, and his application was denied a second time on March 6, 2014. (*Id*. 83-91.) Plaintiff then requested a hearing on his application, (Tr. 92-93), and appeared before Administrative Law Judge (ALJ) Lucian A. Vecchio on July 27, 2015. (*Id*. 59-63.) ALJ Vecchio held a hearing on October 16,

2015, at which plaintiff appeared and testified without counsel.[1] (*Id*. 44-58.) On November 12, 2015, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act. (*Id*. 4-18.) The ALJ's decision became the final decision of the Commissioner after the Appeals Council denied plaintiff's request for review on October 17, 2016. (*Id*. 1-3.)

The Commissioner filed her motion for judgment on the pleadings on June 19, 2017, requesting the court affirm the ALJ's final decision and dismiss the action. (ECF No. 13, Notice of Motion.) Plaintiff filed his opposition to defendant's motion on July 6, 2017, requesting that the Commissioner's motion to be denied and the case be remanded to the ALJ for further development of the record. (*See Generally* Opp. Aff.)

**II.  Personal, Employment, and Non-Medical Evidence**

Plaintiff was born June 4, 1975. (Tr. 144.) Within the 15-year period predating plaintiff's application he was employed as: a security guard, from August 2000 to July 2001; a janitor, from December 2003 to March 2004; and a mover from July to October 2008. (*Id*. 203.) Plaintiff alleged that he has been disabled and unable to work since January 1, 2013. (*Id*. 148.)

---

[1] The ALJ adjourned the first hearing to allow plaintiff to retain counsel, but after a second adjournment was offered for plaintiff to retain counsel, plaintiff chose to proceed with the hearing without counsel. (Tr. 46-47.)

Plaintiff lived by himself in an apartment where he was able to shower, dress, cook, and perform personal care for himself. (Tr. 225-26.) Plaintiff traveled by walking or public transportation. (*Id*. 228.) Plaintiff was able to socialize with others, but had problems getting along with people. (*Id*. 229.) Plaintiff indicated that his impairments affected his ability to understand, remember, complete tasks, concentrate, and get along with people. (*Id*. 229-30.) He has been terminated from jobs for questioning authority. (*Id*.)

Plaintiff testified at the administrative hearing held on October 16, 2015 that he believed he was disabled due to his bipolar disorder, which had been diagnosed when he enlisted in the Navy in 1998. (*Id*. 50.) He was medically discharged from the Navy after having been enrolled for about six weeks. (*Id*.) Plaintiff testified at the administrative hearing that since his onset date in January 2013, he had not received any treatment, therapy, or medication, for his condition. (*Id*. 51, 54.) Plaintiff testified he was ready to enter a program but did not do so because he did not have insurance. (*Id*. 51.) Plaintiff testified that he did not have any problems with his eyes when questioned about his alleged eye impairment. (*Id*. 57.)

**III. Summary of Medical Evidence**

   **A. Prior to Plaintiff's June 28, 2013 SSI Application**

While enlisted in the Navy, Plaintiff was psychiatrically evaluated at the Great Lakes Naval Hospital (Naval Hospital) in December 1996. (Tr. 273.) Based upon the evaluation, Plaintiff was discharged from the Navy due to "defective enlistment and induction into the naval service due to erroneous enlistment into the naval service as evidenced by a bipolar disorder." (*Id*. 301.)

   **B. Medical Evidence on or After June 28, 2013**

Marc Friedman, Ph.D., conducted a consultative psychological examination on October 2, 2013. (*Id*. 305-07.) Dr. Friedman noted that plaintiff spoke clearly and his social interaction skills were adequate. (*Id*. 306.) Dr. Friedman noted plaintiff was slow, but estimated his overall intelligence to be in the average range. (*Id*.) Dr. Friedman diagnosed plaintiff with bipolar disorder and assessed a Global Assessment of Functioning (GAF) score of 60. (*Id*. 307.) He opined that plaintiff would be unable to deal with stress in a work environment. (*Id*. 306.)

Thomas W. Materna M.D., an ophthalmologist, conducted a consultative ocular examination on October 16, 2013. (*Id*. 309.) Dr. Materna's examination showed no abnormalities. (*Id*.)

Amy Brams, Ph.D., a State agency psychological consultant, reviewed the record in conjunction with the initial determination issued in this case, and completed a psychiatric review technique form on October 22, 2013. (Tr. 68.) Dr. Brams concluded that plaintiff's affective disorder did not meet the criteria of Section 12.04 of the Listing Impairments. (*Id.*) She determined that plaintiff could follow simple instructions, attend and concentrate, keep adequate pace and persistence, and relate and adapt to routine tasks in a work situation. (*Id.* 70.)

Algernon Phillips, M.D., a State agency medical consultant, also reviewed the record in conjunction with the initial determination on October 24, 2013, and concluded that plaintiff did not have a severe visual impairment. (*Id.* 67.) Raymond Briski, M.D., a State agency medical consultant, reviewed the record on March 1, 2014, and agreed that plaintiff did not have a severe visual impairment. (*Id.* 77.)

Mary Ellen Menken, Ph.D., a state agency psychological consultant completed a psychiatric review technique assessment on March 5, 2014, and concluded that plaintiff's affective disorder did not meet the criteria of Section 12.04 of the Listing of Impairments. (*Id.* 78.) She opined that plaintiff had mild restrictions of activities of daily living; moderate difficulties maintaining social function; moderate difficulties

6

in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. (*Id*.) She opined that plaintiff would be able to manage basic work-related social interactions with supervisors and coworkers adequately and respond appropriately to basic supervision and criticism. (*Id*. 80-81.) Dr. Menken wrote that the opinion of Dr. Friedman that plaintiff "would be unable to deal with stress in a work environment" did not appear adequately supported. (*Id*. 81.)

Ashley Dolan, Ph.D., conducted a consultative psychiatric evaluation on July 24, 2015. (*Id*. 320-23.) Dr. Dolan noted that Plaintiff's intellectual functioning was estimated to be average. (*Id*. 322.) Dr. Dolan diagnosed a major depressive disorder. (*Id*.) She noted that plaintiff had mild limitations relating adequately with others and appropriately dealing with stress. (*Id*.) Dr. Dolan opined that the results of the examination appeared to be consistent with psychiatric problems, but they did not appear to be significant enough to interfere with plaintiff's ability to function on a daily basis. (*Id*.)

**C. Medical Expert Testimony**

Leslie Fine, M.D., a board-certified psychiatrist, testified as a medical expert at the administrative hearing held on October 16, 2015. (*Id*. 52-57, 328-30.) Dr. Fine testified that based on the record and Plaintiff's testimony, Plaintiff

7

did not meet or equal the criteria of any listing. (*Id*.) Dr. Fine opined that Plaintiff was mildly impaired in: activities of daily living; social interactions; concentration; persistence; and pace. (Tr. 56-57.) Plaintiff had not experienced periods of decompensation. (*Id*. 57.)

## DISCUSSION

I.  Standard of Review

   **A. The Substantial Evidence Standard**

A district court may set aside determination by an ALJ "only if it is based upon legal error of if the factual findings are not supported by substantial evidence in the record as a whole." *Greek v. Colvin*, 802 F.3d 370, 374-75 (2d Cir. 2015) (citing *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla," rather, it is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *accord Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013).

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation

8

and internal quotation marks omitted.)  Thus, "[i]f the reviewing court finds the substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists."  *Johnson v. Astrue*, 563 F.Supp.2d 444, 454 (S.D.N.Y. 2008) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)).  "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record."  *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).  If the court finds there is substantial evidence to support the Commissioner's determination, the decision must be upheld, "even if [the court] might justifiably have reached a different result upon a *de novo* review."  *Jones v. Sullivan*, 949 F.2d 57. 59 (2d Cir. 1991) (internal citation omitted).

### B. The ALJ's Five-Step Evaluation for Determining Disability

"To receive federal disability benefits, an applicant must be 'disabled' within the meaning of the Social Security Act."  *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (citing 42 U.S.C. § 423(a), (d).)  The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

9

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "An individual may be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Regulations issued pursuant to the Social Security Act set forth a "five-step sequential evaluation" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008) (describing the five-step process). If at any step, the ALJ finds that claimant is either disabled or not disabled, the inquiry ends at that step. *Anderson v. Colvin*, No. 15-CV-6720, 2017 WL 1166350, at *6 (E.D.N.Y. Apr. 3, 2017). The claimant bears the burden of proof in the first four steps in the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).

At the first step, the Commissioner must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, the Commissioner proceeds to the second step to determine whether the claimant has a "severe medically determinable physical or mental impairment." *Id*.

§ 404.1520(a)(4)(ii). An impairment is considered severe if it "significantly limits [claimant's] physical or mental ability to do basic work activities." *Id*. § 404.1520(c). If the impairment is severe, the ALJ proceeds to the third step, in which the Commissioner determines whether the impairment meets or equals one of the impairments listed in the Act's regulations. *Id*. § 404.1520(a)(4)(iii); *see also* 20 C.F.R. Part 404, Subpart P, App'x 1. If the claimant has one of the listed impairments, then the ALJ will find that the claimant is disabled under the Act. If the claimant does not have a listed impairment, the ALJ must determine the claimant's residual functional capacity ("RFC") before continuing with steps four and five. *Puccio v. Colvin*, No. 15-CV-06941, 2017 WL 1232488, at *3 (E.D.N.Y. Mar. 31, 2017).

An individual's RFC is "the most [a claimant] can still do" in a work setting despite any physical and mental limitations caused by the claimant's impairments and any related symptoms. 20 C.F.R. § 404,1545(a)(1). At step four, the ALJ uses the RFC determination to determine if the claimant can perform past relevant work. *Id*. § 404.1520(a)(4)(iv). If the claimant can still perform past relevant work, the claimant is not disabled. If the claimant established that the impairments prevent him from returning to his previous occupation, the ALJ proceeds to step five, where the Commissioner must determine

11

whether the claimant—given the claimant's RFC, age, education, and work experience—has the capacity to perform other substantial gainful work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If claimant can make perform other work, the claimant is not disabled.

### C. The ALJ's Affirmative Duty to Develop the Record

Because benefits proceedings are non-adversarial in nature, "the [social security] ALJ, unlike a judge in trial, must [on behalf of all claimants] . . . affirmatively develop the record." *Lamay v. Comm'r of Soc. Sec.,* 562 F.3d 503, 508-09 (ds Cir. 2009) (quoting *Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir. 1999)) (alterations in original). Further, "when a claimant appears *pro se,* the ALJ has a heightened responsibility to scrupulously and conscientiously probe into, inquire of, and explore . . . all the relevant facts, and the reviewing court must make a searching investigation of the record to ensure that the claimant's rights were protected." *Massimino v. Shalala*, 927 F. Supp. 139, 143 (S.D.N.Y. 1996)(citations omitted); *see also Gold v. Secretary of Health, Educ. and Welfare,* 463 F.2d 38, 43 (2d Cir.1972).

Thus, although substantial deference is afforded to the ALJ's determination, remand may be required if the ALJ fails to discharge his or her affirmative obligation to develop the record when making a disability determination. *See Butts v.*

*Barnhart,* 388 F.3d 377, 386 (2d Cir. 2009) ("[I]n cases where the ALJ failed to develop the record sufficiently to make appropriate disability determinations, a remand for further findings [that] would so plainly help to assure the proper disposition of [the] claim. . .is particularly appropriate.") (citation omitted).

**II. The ALJ'S Disability Determination**

On November 12, 2015, the ALJ issued a decision denying Plaintiff's claims. (Tr. 7-14.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since January 1, 2013, the alleged onset date of disability. (*Id.* 10.)

At step two, the ALJ found that plaintiff had one medically determinable impairment: an affective disorder variably characterized as bipolar disorder and major depressive disorder. (*Id.*) ALJ Vecchio found that plaintiff did not allege and there was not any evidence of a physical impairment or vision impairment. (*Id.*)

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months. (*Id.* 12.) Specifically, the ALJ found that no medical source, clinic, or hospital had

provided mental health treatment to plaintiff since the alleged onset date. (*Id.* 11.)

At step four, the ALJ concluded that plaintiff had the RFC to perform work activities. Specifically, the ALJ found that plaintiff is fully independent in his self-care and performs all activities of daily living without limitation. (Tr. 13-14.) The ALJ next noted that while plaintiff had mild limitation in social functioning, his manner of relating was adequate and he could interact appropriately with other individuals. (*Id.* 14.) The ALJ also found that while plaintiff had mild limitations in concentration and persistence, the limitations would not prevent him from finding a job. At the administrative hearing, plaintiff testified that he was actively looking for work in computer programming and he would be able to do that work if he were offered a job. (*Id.* 14, 49.) In the last functional area of decompensation, the ALJ found that plaintiff had not experienced any extended episodes during the period at issue. (*Id.*)

The first evaluation ALJ Vecchio considered was that of Dr. Friedman in October 2013. Dr. Friedman diagnosed plaintiff with bipolar disorder with a GAF score of 60. (*Id.* 14.) Dr. Friedman noted that plaintiff had mild symptoms in social functioning, but generally functioned well. (*Id.*) Dr.

Friedman concluded that the only limitation plaintiff had was an inability to deal with stress in a work environment. (*Id.* 12.)

The second consultative psychological examination reviewed by the ALJ was conducted in July 2015, by Ashley Dolan, Psy.D, who diagnosed plaintiff with major depressive disorder. (*Id.*) Dr. Dolan also concluded that plaintiff had mild limitations in relating adequately with others and dealing with stress. (Tr. 12.) It was Dr. Dolan's opinion that claimant had, at most, mildly limited ability to interact appropriately with others. (*Id.*)

ALJ Vecchio also engaged the services of medical expert Dr. Fine to review the evidence. (*Id.*) Dr. Fine concluded the plaintiff's affective disorder caused, at most, mild limitations in activities of daily living, social interaction, concentration, persistence and pace. (*Id.*) The ALJ deferred to Dr. Fine's opinion when conflicting opinions arose, but the ALJ gave substantial weight to the medical opinions of the two consultative mental health providers who examined plaintiff. (*Id.* 13.)

At step four, the ALJ concluded that plaintiff had the Residual Functional Capacity to perform past relevant work and was not disabled under section 1614(a)(3)(4) of the Social Security Act. Because the ALJ ruled that plaintiff is not

15

disabled, the evaluation ended and there was no need to proceed to step five.

### III. ANALYSIS

Plaintiff requested review and remand of the Commissioner's determination for further development of the record, as plaintiff now has Medicaid and can begin regular medical treatment. For the reasons stated below, plaintiff's request for remand is denied.

#### A. ALJ's Determination of Plaintiff's Disability

ALJ Vecchio concluded that plaintiff did not have an impairment or combination of impairments that significantly limited his ability to perform basic work activities. (Tr. 10-14.) Although the ALJ acknowledged plaintiff's affective disorder, which is a medically determinable impairment, the ALJ found that it was not severe enough to limit his ability to perform basic work-related activities for twelve consecutive months. (*Id.* 10.)

For an impairment to qualify as severe at the second step of the sequential evaluation, it must "significantly limit your physical or mental ability to do basic work activities," which are "the abilities and aptitudes necessary to do most jobs," such as:

1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

2) Capacities for seeing, hearing, and speaking;

3) Understanding, carrying out, and remembering simple instructions;

4) Use of judgment;

5) Responding appropriately to supervision, co-workers and usual work situations; and

6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.921; *see* Social Security Ruling (SSR) 85-28.

There is substantial evidence that supports the ALJ's finding that plaintiff's bipolar disorder did not limit his ability to perform basic work activities. A review of Dr. Friedman's record showed that claimant's abilities to sustain an ordinary routine without special supervision, perform activities within a schedule, and make simple work-related decisions were not significantly limited. (Tr. 80.) Further, although Dr. Dolan diagnosed plaintiff with major depressive disorder, she still reached the conclusion that plaintiff's psychiatric problems were not significant enough to interfere with plaintiff's ability to function on a daily basis. (*Id.* 322.) The ALJ gave substantial weight to the medical opinions of Dr. Friedman and Dr. Dolan, and ultimately deferred to the opinion

17

of medical expert Dr. Fine.  The medical expert concluded that plaintiff's affective disorders caused, at most, mild limitations in daily living.  (*Id*. 13.)

Plaintiff argued the ALJ's decision should be remanded so the record can be further developed.  (*See* Opp. Aff. at 1.) Plaintiff further argued that he previously lacked health insurance, but has now obtained Medicaid and can begin regular medical treatment, implying that he was unable to seek treatment prior to the ALJ's determination.  (*See Id*. at 1.)  However, when questioned at the hearing, claimant testified that, even without insurance, he did not seek treatment at the Veterans Administration.  (Tr. 50.)  Moreover, claimant also acknowledged he did not receive any mental health treatment between being medically discharged from the Navy in 1998, and his administrative hearing, nor did he take any medication for his mental health problems.  (*Id*. 50-51.)  Further, although plaintiff requests remand for further development of the record, he neither points to nor provides any new evidence to be considered on remand.  Plaintiff's "plan to begin regular medical treatment" is not evidence and is insufficient to warrant remand.  (Opp. Aff. at 1.)

Accordingly, there is substantial evidence to support the determination of the ALJ that plaintiff is not disabled and

the case will not be remanded for further development of the record.

## **CONCLUSION**

For the foregoing reasons, plaintiff's request for remand is DENIED and defendant's Motion for Judgment on the Pleadings is GRANTED.  The Commissioner's final decision that plaintiff is not eligible for Supplemental Security Income under the Social Security Act is hereby affirmed.  The Clerk of Court is respectfully directed to enter judgment in favor of defendant, serve a copy of this memorandum and order on *pro se* plaintiff, and close this case.

**SO ORDERED.**

Dated:   April 30, 2019
         Brooklyn, New York

_____/s/_____
Kiyo A. Matsumoto
United States District Judge
